FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ROBERT HALE; JOSHUA HALE; NAVA
S. SUNSTAR; BUTTERFLY SUNSTAR,
          *Plaintiffs-Appellants*,

v.

GALE NORTON, Secretary of the
Interior; GARY CANDELARIA,
Superintendent, Wrangell-St. Elias
National Park and Preserve;
HUNTER SHARP, Chief Ranger,
Wrangell-St. Elias National Park
and Preserve; DEPARTMENT OF THE
INTERIOR; NATIONAL PARK SERVICE;
FRAN MAINELLA, Director of the
National Park Service; MARCIA
BLASZAK, Acting Regional Director
of the National Park Service; all in
their official capacities,
          *Defendants-Appellees*,

NATIONAL PARKS CONSERVATION
ASSOCIATION; THE WILDERNESS
SOCIETY; ALASKA CENTER FOR THE
ENVIRONMENT,
          *Defendants-Intervenors-
          Appellees*.

No. 03-36032
D.C. No.
CV-03-00257-A-RRB
ORDER DENYING
REHEARING AND
OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
July 12, 2005—Anchorage, Alaska

10203

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.

Filed August 25, 2006

Before: Alfred T. Goodwin, Melvin Brunetti, and William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

SUMMARY

Environmental Law/Governmental Regulation

The court of appeals affirmed a judgment of the district court. The court held that inholders' ability to use a road within a national park to access their land was subject to reasonable regulation.

During the course of rebuilding a house on their property surrounded by a national park in Alaska, appellants including Robert and Joshua Hale used a bulldozer to bring in supplies over a park road without first seeking authorization from appellee the National Park Service (NPS). The NPS informed the Hales that an environmental assessment (EA) would be required before the agency could grant a permit for bulldozer use, and offered to waive the expense of conducting the EA. The Hales filed suit in district court, seeking an injunction requiring the NPS to provide adequate and feasible access to their property, and a declaratory judgment that the NPS was violating their right-of-way over the road by requiring a permit. The district dismissed the case, ruling that it lacked jurisdiction under the Administrative Procedure Act (APA) because there was no final agency action to review.

The Hales appealed, contending that the guarantee of adequate and feasible access under the Alaska National Interest Lands Conservation Act (ANILCA) superseded other laws, including the National Environmental Policy Act (NEPA),

and thus it was unreasonable for the NPS, acting on behalf of the Secretary of the Department of the Interior, to subject their permit request to any NEPA analysis.

[1] The APA provides for judicial review only of agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court. [2] Even if a particular agency action does not, on its own, satisfy the principle of finality, the collateral order doctrine may nevertheless preserve jurisdiction. The order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. [3] ANILCA provides limited access rights for inholders such as the Hales. [4] Given ANILCA's unique statutory scheme, the Hales' challenge was analogous to an appeal from the rejection of a qualified immunity defense that turns on an issue of law—an order that squarely falls within the collateral order doctrine. [5] First, the regulations incorporating NEPA into the permitting process are clearly conclusive and not tentative. Second, the determination of whether the Department of the Interior can incorporate NEPA into the permitting process is a pure and independent question of law, separate from whether the access ultimately afforded is adequate and feasible. Third, if the Hales had to wait for the NPS's ultimate permitting decision, the Department of the Interior's decision to apply NEPA will likely become effectively unreviewable. It had to be held that the Hales challenged an administrative decision that, like an order that denies a qualified immunity defense, fell within the collateral order doctrine.

[6] The Hales' ability to use the road within the park was subject to reasonable regulation. The Ninth Circuit has decisively rejected the argument that the NPS lacks the power to regulate travel to an inholding across federally protected land, holding that the government could regulate an inholder's use of a trail. The Secretary's power to regulate within a national park to conserve the scenery and the nature and historic

| 10206 | HALE v. NORTON |
|---|---|

objects and wildlife therein applies with equal force to regulating an established right of way within the park. [7] Under ANILCA, inholders are entitled to such rights as may be necessary to assure adequate and feasible access to their land, but these rights are subject to reasonable regulations issued by the Secretary to protect the natural and other values of such lands. [8] If the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs. [9] The court of appeals saw no conflict between NEPA's information-gathering and analysis requirements and ANILCA's requirement of adequate and feasible access subject to reasonable regulations to protect the natural and other values of such lands. NEPA expressly provides that to the fullest extent possible the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this Act. NEPA helps rather than hinders the Department of the Interior in fulfilling its statutory duty under ANILCA to balance adequate and feasible access with the protection of natural and other values. It had to be held that the incorporation of NEPA into the permit-granting procedure is consistent with ANILCA. The judgment of the district court had to be affirmed.

## COUNSEL

Russell C. Brooks and James S. Burling, Pacific Legal Foundation, Sacramento, California, for the plaintiffs-appellants.

Matthew J. Sanders, United States Department of Justice, Washington, D.C., for the defendant-appellee.

Robert W. Randall and Rebecca L. Bernard, Trustees for Alaska, Anchorage, Alaska, for the defendants-intervenors-appellees.

| HALE v. NORTON | 10207 |
|---|---|

## ORDER

This court's opinion filed on February 9, 2006, and published at 437 F.3d 892 (9th Cir. 2006), is withdrawn and replaced by the attached opinion.

With the filing of this new opinion, the panel has voted unanimously to deny Appellants' petition for rehearing. Judge Fletcher has voted to deny the petition for rehearing en banc, and Judge Goodwin and Brunetti so recommend. The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. Appellants' petition for rehearing and petition for rehearing en banc, filed March 24, 2006, are **DENIED**.

## OPINION

W. FLETCHER, Circuit Judge:

In 2002, plaintiffs-appellants (collectively, "the Hales") purchased 410 acres of land near McCarthy, Alaska. Their property is completely surrounded by the Wrangell-St. Elias National Park and Preserve (the "Park"), which was created in 1980. The Hales gain access to their property over what used to be the thirteen-mile McCarthy-Green Butte Road (the "MGB road"). In 1938, the Alaska Road Commission listed the MGB road as "abandoned." All of its bridges have washed away, and the effects of vegetation and erosion have reduced it to little more than a trail.

The house on the Hales' property burned down in the spring of 2003. During the course of rebuilding, the Hales used a bulldozer to bring in supplies over the MGB road without first seeking authorization from the National Park Service ("NPS"). Shortly thereafter, the NPS posted a public notice

stating that no motorized vehicles except snow machines could use the MGB road. In July 2003, the Hales contacted the NPS superintendent to request a permanent permit to traverse the MGB road with a bulldozer and a trailer. The superintendent responded promptly, offering to assist the Hales in preparing the necessary applications for a right-of-way permit. Two months later, in September 2003, the Hales submitted an "emergency" application for a temporary permit, asserting that they needed to transfer supplies before "freeze up."

The NPS promptly responded by letter, requesting more information about the nature of the emergency and the proposed bulldozer use. The letter noted that other inholders in the Park had used bulldozers for access in the winter months (that is, after "freeze up") when the frozen ground and snow cover protected the ground from damage. The Hales responded in writing, but did not provide all of the requested information. The NPS then informed the Hales that an environmental assessment ("EA") would be required before the agency could grant a permit for bulldozer use. The NPS explained that it did not regard the situation as falling within the emergency exception to the requirements of the National Environmental Policy Act ("NEPA"), as set out in 40 C.F.R. § 1506.11.

In a series of contacts in September and October 2003, the NPS offered to prepare an EA and make a decision in approximately nine weeks. It also offered to waive the expense of conducting the EA. The Hales did not provide the information the NPS requested in order to conduct the EA. Instead, in November 2003, they filed this suit. They sought an injunction requiring the NPS to provide what they deemed adequate and feasible access to their property, and a declaratory judgment that the NPS was violating their right-of-way over the MGB road by requiring a permit. They also sought a declaratory judgment that issuing a permit for use of the MGB road did not constitute a major federal action subject to the require-

ments of NEPA. The Hales moved for a Temporary Restraining Order ("TRO") and a preliminary injunction.

The district court denied the motion for the TRO and dismissed the case for lack of subject matter jurisdiction. The court held that even if the Hales had a valid right-of-way over the MGB road, their use of the road was subject to reasonable regulation by the NPS. Consequently, the Hales were required to apply for a permit, regardless of any right-of-way they might possess. Since the NPS had not acted on the Hales' permit application, the district court held that it lacked jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 704, because there was no final agency action to review.

## I. Jurisdiction

We review de novo dismissals for lack of subject matter jurisdiction. *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1111 (9th Cir. 2003).

[1] The Administrative Procedure Act provides for judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Supreme Court has explained that

> [a]s a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights and obligations have been determined," or from which "legal consequences will flow."

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). "[T]he fact that a statement may be definitive on some issue is insufficient to create a final action subject to judicial

review." *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005). For example, courts have found that "[a] requirement that a party participate in additional administrative proceedings is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1279 (D.C. Cir. 2005) (internal quotation marks and citation omitted); *see also Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 616 (7th Cir. 2003).

[2] Even if a particular agency action does not, on its own, satisfy the principle of finality, the collateral order doctrine may nevertheless preserve jurisdiction. Under the collateral order doctrine, a "small class" of orders that do not end the proceedings below are treated as final and immediately appealable. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To come within this "small class," "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

The collateral order doctrine arose as a "practical construction" of 28 U.S.C. § 1291, which requires that appellate courts review only "final decisions" of district courts. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). However, the doctrine also applies to judicial review of administrative proceedings. *See, e.g., FTC v. Standard Oil Co.*, 449 U.S. 232, 246 (1980) (applying the doctrine to determine the reviewability of an agency order); *Rhode Island v. EPA*, 378 F.3d 19, 23-25 (1st Cir. 2004) (discussing the circuit consensus that the collateral order doctrine applies to administrative determinations).

[3] The Alaska National Interest Lands Conservation Act ("ANILCA") provides limited access rights for inholders such as the Hales. The statute provides,

> Notwithstanding any other provisions of this Act or other law . . . the State or private owner or occupier shall be given by the Secretary such rights as may be necessary to assure adequate and feasible access for economic and other purposes to the concerned land . . . . Such rights shall be subject to reasonable regulations issued by the Secretary to protect the natural and other values of such lands.

16 U.S.C. § 3170(b). The Hales contend that the guarantee of "adequate and feasible access" under ANILCA supersedes other laws, including NEPA, and thus it is unreasonable for the NPS, acting on behalf of the Secretary of the Department of the Interior, to subject their permit request to any NEPA analysis. Framed this way, the Hales' complaint does not challenge the result of the permitting process which, as the district court found, had not produced a final action at the time of the Hales' suit. Rather, it challenges the authority of the Department of the Interior to subject the permit request to a NEPA analysis in the first place. *See* 43 C.F.R. §§ 36.6, 36.10(d).

[4] Given ANILCA's unique statutory scheme, the Hales' challenge is analogous to an appeal from the rejection of a qualified immunity defense that turns on an issue of law—an order that squarely falls within the collateral order doctrine. *See, e.g., Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). Qualified immunity provides

> an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is *immunity from suit*

10212                      HALE v. NORTON

rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Hales claim that because ANILCA guarantees access "[n]otwithstanding any . . . other law," they are entitled to immunity from the burdens of NEPA analysis. Like qualified immunity, the Hales' claim turns on an "essentially legal question," and that claim is "effectively lost" if the NPS conducts the NEPA analysis. If the Hales must wait to challenge the NPS's actual permitting decision, the relevance of NEPA is likely to fall away. The district court will review the NPS's substantive determination of "adequate and feasible access . . . subject to reasonable regulations" with reference to the permit issued, and the procedure that the NPS followed in reaching its permitting decision will likely not be relevant to that determination.

[5] We hold that the Hales here challenge an administrative decision that, like an order that denies a qualified immunity defense, satisfies the "conclusiveness," "separability," and "unreviewability" prongs of the collateral order doctrine. First, the regulations incorporating NEPA into the permitting process are clearly conclusive and not tentative. Second, the determination of whether the Department of the Interior can incorporate NEPA into the permitting process is a pure and independent question of law, separate from whether the access ultimately afforded is "adequate and feasible." Third, if the Hales must wait for the NPS's ultimate permitting decision, the Department of the Interior's decision to apply NEPA will likely become effectively unreviewable. *Cf. Meredith v. Fed. Mine Safety & Health Review Comm'n*, 177 F.3d 1042, 1050-52 (D.C. Cir. 1999) (applying collateral order doctrine to review an administrative order that rejected defendants' assertion of statutory immunity).

HALE v. NORTON                      10213

II. Discussion

[6] We agree with the district court that the Hales' ability to use the MGB road within the Park is subject to reasonable regulation. In *United States v. Vogler*, 859 F.2d 638 (9th Cir. 1988), we decisively rejected the argument that the NPS lacks the power to regulate travel to an inholding across federally protected land. In *Vogler*, an inholder in the Yukon-Charley Rivers National Preserve in Alaska sought to drive heavy equipment over a claimed R.S. 2477 trail without a permit. *Id.* at 640-42. Assuming, without deciding, that the trail qualified as a right-of-way, we held that the government could nevertheless regulate the inholder's use of the trail:

> Congress has made it clear that the Secretary has broad power to regulate and manage national parks. The Secretary's power to regulate within a national park to "conserve the scenery and the nature and historic objects and wildlife therein . . . ." applies with equal force to regulating an established right of way within the park . . . [T]he regulations here are necessary to conserve the natural beauty of the Preserve; therefore, they lie within the government's power to regulate national parks.

*Id.* at 642 (quoting 16 U.S.C. § 1). Consequently, even if the Hales have a valid right-of-way over the MGB road — which we do not decide — the existence of that right-of-way would not shield them from reasonable regulation by the NPS.

[7] ANILCA provides limited access rights for inholders in the absence of a right-of-way, but it also contemplates reasonable government regulation. Under ANILCA, inholders are entitled to "such rights as may be necessary to assure adequate and feasible access" to their land, but these rights are "subject to reasonable regulations issued by the Secretary to protect the natural and other values of such lands." 16 U.S.C. § 3170(b).

| 10214 | HALE v. NORTON | | HALE v. NORTON | 10215 |

NEPA requires the preparation of an environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). The regulations direct agencies to prepare an "environmental assessment" ("EA") to determine whether an EIS is necessary unless the proposal is one that "[n]ormally requires" an EIS or that "[n]ormally does not require" either an EIS or an EA. See 40 C.F.R. § 1501.4(a)-(b). Even if an EA is not required, however, "[a]gencies may prepare an environmental assessment on any action at any time in order to assist agency planning and decisionmaking." 40 C.F.R. § 1501.3(b).

[8] NEPA ensures that an agency, "in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts," and will make such information available to the public. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). "NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Id.* at 350. Significantly, "[i]f the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs." *Id.*

[9] This case differs from *Vogler* only in that the Department of the Interior has, by regulation, incorporated a NEPA review process into its permit-granting procedure. We see no conflict between NEPA's information-gathering and analysis requirements and ANILCA's requirement of "adequate and feasible access . . . subject to reasonable regulations . . . to protect the natural and other values of such lands." 16 U.S.C. § 3170(b). NEPA expressly provides that "to the fullest extent possible . . . the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this [Act]." 42 U.S.C. § 4332. In our view, NEPA helps rather than hinders the Department of the Interior in fulfilling its statutory duty under ANILCA to balance "adequate and feasible access" with the protection of "natural and other values." We therefore hold that the incorporation of NEPA into the permit-granting procedure is consistent with ANILCA.

## Conclusion

We hold that the district court had jurisdiction to consider the Hales' challenge to the incorporation of NEPA into ANILCA's permitting process, and that conducting a NEPA analysis is consistent with the "adequate and feasible access" right of ANILCA.

**AFFIRMED.**